## MELANIA PAITEL DE MORSOMMÉ, Plff.,

### *v.*

## MUNICIPALITY OF YAUCO, Dft.

---

Ponce, Law, No. 223.

1. It is not negligence *per se* for a municipality to erect its sidewalks so that they are a foot or more above the drain or gutter.
2. A motion for a new trial will be denied, when based on newly-discovered evidence, when the court can see that, even if it were adduced, the verdict would probably not be changed.

Order filed February 21, 1908.

*Mr. Harry P. Leake,* attorney for plaintiff.

*The Attorney General of Porto Rico,* for defendant.

Order by RODEY, Judge:

This cause is before us on the motion of plaintiff to set aside the verdict of the jury and grant her a new trial. The case was tried before a jury in the Ponce district of this court on January 18, 1908, and a verdict returned for the defendant.

The plaintiff is an old lady, sixty-nine years of age. She is a widow, and was living with a widowed daughter, a Mrs. Gutierrez, who is a school-teacher, and has two little children. On the night of the 3d of February, 1907, plaintiff and her said daughter and one of the children attended a lecture or sermon at the Baptist church in Yauco, and, after it was over, came down the steps in front of the church to the sidewalk, and started toward their home along the sidewalk, but almost immediately changed their minds and decided to turn back in the opposite direction, so as to go to the Casino, where a ball was being held. About the time the old lady started to turn around, according to her own evidence, she slipped on the sidewalk and fell flat, her head and part of her body reaching over the edge of the sidewalk into the gutter, into which she immediately thereafter entirely rolled or fell. She was badly injured, but it was not clear from the evidence whether the fall on the sidewalk caused the whole of the injury, or whether the slipping or rolling into the gutter contributed thereto. Her left wrist was broken her face was badly scratched, and her right hip or thigh bone was broken.

Counsel for plaintiff has gone to extraordinary trouble and

Paitel de Morsommé v. Yauco.

taken unusual pains in preparing and supporting his motion for a new trial. Rarely have we seen a more careful effort or better presentation of such an issue, and, in justice to him, we have gone over his work with the care it merits. His work in this behalf no doubt induced the assistant attorney general of the island, who appeared for the municipality, to oppose the motion with equal zeal and care. In consequence our work has been made much easier, for which we freely make acknowledgment to both sides. We regret, though, that the time at our disposal does not permit us to set forth our conclusions as elaborately as our research would warrant, but we nevertheless are fully satisfied with the conclusions we have arrived at.

The motion contains nine reasons why a new trial should be granted, several of which are the usual and formal ones, and others of which deserve serious consideration. The fourth reason is alleged to be because of newly-discovered evidence, showing that plaintiff fell directly into the ditch, without fault on her part, and that she did not in fact fall on the sidewalk at all. It is unquestioned that the old lady herself, when testifying, stated plainly and distinctly that she slipped and fell on the sidewalk,—and she said this repeatedly,—and that when she fell a part of her body extended over the edge of the sidewalk above the gutter, and that, after falling on the sidewalk, she then slid or rolled into the gutter. We have just caused the stenographer to read his notes of her evidence in that behalf to us. The fifth reason alleging why a new trial should be granted is because the plaintiff was compelled to testify in two languages, she being a Frenchwoman, and that, for this reason, she was not well understood, as she had to testify partly in French and Spanish, not knowing any English, and this had thereafter to be interpreted into English. An affidavit of the

official interpreter is filed, tending to show that she did not understand Spanish very well, or the difference in the meaning of the Spanish words "acera" (sidewalk) and "cuneta" (gutter), etc. The old lady also files an affidavit of her own, in French, setting out that she did not understand Spanish very well when she testified, because she had not used that language for nearly a year previous, having been confined to her home since the accident, and that the language of her household is French. The court itself is conversant with the French language and has almost an equal knowledge of Spanish, and we took particular care to see that her evidence was properly interpreted to the jury. The official court interpreter also has a very considerable knowledge of French as we then learned, and used that language considerably when explaining matters or putting questions to her, if she did not appear to understand them when put in Spanish. Her answers were often broken and were nearly always partly in French and partly in Spanish, but were always then interpreted completely into English by the official interpreter for the jury. It also appeared during the trial that two, and perhaps more, members of the jury, were fully conversant with the French language, and practically all of them thoroughly or fairly understood Spanish; of course, all of them had to and did understand English or they could not serve as jurors. The court heard and understood the old lady's evidence in the way she gave it, and we have read this affidavit of hers in French, and we know of our own knowledge that she neither testified as her affidavit intimates she intended to testify, nor was there any mistake or difficulty about the meaning of her words when she did testify. Her own counsel, no doubt realizing the legal effect of her evidence, in arguing to the jury wholly discarded her statement that she slipped and

Paitel de Morsommé v. Yauco.

fell on the sidewalk and afterwards rolled or slipped into the ditch, and instead argued that, at the street corner, which was quite close to where she came down the steps from the church, she no doubt stepped out over where the gutter was covered at the crossing, and then, when she turned to go back towards the Casino, she stepped into the open gutter and injured herself by striking on the edge of the cement sidewalk and on the ground on the oposite side, etc. So she had the benefit of his argument to the jury on that theory of the occurrence.

Four fairly good photographs of the church front, the sidewalk, the gutter, and the street, were introduced in evidence, and the jury could see the condition of the sidewalk and street there at the time of the accident. The evidence as to the amount of light there at the time, and as to whether or not a street lamp that was on the opposite side of the street was lit at the time, was conflicting and about equally divided, and went to the jury for its decision. The testimony of the old lady's daughter was that, at the moment her mother fell on the sidewalk, she was putting a shawl or some such garment on her little girl, and did not see her mother actually fall, and only saw her as she rolled into the gutter from the sidewalk; so this corroborated the old lady's own statement, which was unequivocal, that, when going along the sidewalk, she simply slipped on it and fell, and then rolled into the gutter. The evidence was that the sidewalk was in good condition, and the photographs certainly showed it to be in first-class condition, and that it was a smooth cement walk. An affidavit of one Ramona Montalvo is filed as newly-discovered evidence, which states that the witness was close behind the old lady at the time of the accident, and that she left the sidewalk and went out into the street and started back to the Casino, but that she stepped off the edge of the street into the

gutter. This witness states that she did not like to come to court, and hence concealed her testimony, and that plaintiff and her daughter did not know that she knew this fact. This evidence, if admitted, would contradict the old lady and her daughter, besides other witnesses.

Many objections are made to the instructions of the court. We have gone over them carefully again, and while, if the argument now made in this motion for a new trial had been presented to us before we gave the instructions, we might have modified some of them or arranged them differently, still, on the whole, we feel that our instructions fairly gave the law to the jury, and presented the issues of fact for them to decide. The only question about which we have had doubt is whether or not it is negligence *per se* for a municipality to erect its cement sidewalks so that the outer wall of the sidewalk is often a foot and a half or even more than that above the bottom of the drain into which the street slopes. Apart from and in addition to the evidence, the photographs in this case show exactly the condition of the edge of the street in question and the height of the surface of the cement sidewalk above the gutter. In two of the pictures a little girl appears sitting on the sidewalk with her feet on the ground in the drain or gutter, and in another a man is standing in the gutter, so that the jury could well judge of the depth from the sidewalk to the bottom of the drain or gutter. The evidence showed that the photograph showing the little girl sitting on the sidewalk represented the condition of the street at the time of the accident, and that at that time the street sloped gradually into the drain and did not have an abrupt edge as at a later date it did have, as is shown in the photograph where the man appears standing. After full consideration of the matter, in the light of the evi-

Paitel de Morsommé v. Yauco.

dence in this case, we adhere to our view, and we would again refuse to instruct that the erection of such a sidewalk, and the leaving of it in that condition in relation to the edge of the street, is of itself negligence *per se* in the municipality. At any rate, according to the evidence in the case, the jury may well have believed that the ditch cut no figure at all in the injury, and that the fall of plaintiff flat on the sidewalk broke both her wrist and her thigh or hip; and surely the municipality could not be liable to a person thus falling on a sidewalk that was in good condition.

There were other points in the case, to all of which we have given consideration, but none of which have such merit that a new trial should be granted because of them. There must be an end to all litigation sometime, and when a plaintiff has had his or her day in court and the issues have been fairly presented, and the jury has passed on all controverted questions of fact, and the court, on the whole, has presented the case and the law to them properly, there is no reason for a new trial.

If all the evidence which plaintiff claims she could now procure, together with the evidence that was presented before, were again submitted to a jury, coupled with the cross-examination of the old lady and her daughter as to why they testified as they did on the former trial, we are not able to say that a jury would probably find a different verdict than the one already rendered; and when a court is unable to say that a jury would probably do this, it is its duty to deny the motion for a new trial. The mere fact that this plaintiff is entitled to sympathy because of her injury is no reason why the municipality should be held liable, if the facts are as she and her daughter and others said they were. We therefore feel constrained to overrule the motion for a new trial, and it is so ordered.